**In the United States District Court**
**for the District of Kansas**

**United States of America**,
Plaintiff,

v. Case No. 25-10040-01 JWB

**James Dean Yohn**,
Defendant.

## Sentencing Memorandum

James Dean Yohn asks the Court to accept the parties Rule 11(c)(1)(C) plea agreement and to sentence him in accordance with the agreement. This agreement proposes a custodial sentence between 168-180 months, followed by 5 years of supervised release. By accepting this plea agreement, the Court avoids the expenditure of important Court and prosecutorial resources. And a sentence consistent with the plea agreement serves the interests of justice because it does not offend the advisory sentencing Guidelines and is consistent with the sentencing factors of 18 U.S.C. § 3553(a).

### I. The plea agreement avoids the expenditure of important Court and prosecutorial resources needed to litigate whether the higher penalties under 18 U.S.C. § 2252A(b)(2) apply.

Under 18 U.S.C. § 2252A(b)(2), a mandatory minimum of 10 years applies when an individual convicted of possession of child pornography has a prior conviction "under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward[.]" Without a qualifying prior conviction, there would be no mandatory minimum for people convicted of this charge. For those convicted of

distribution of child pornography, a qualifying predicate conviction makes the statutory penalties 15 to 40 years, instead of 5 to 20 years.

Mr. Yohn has a prior conviction for indecent liberties with a child, in violation of K.S.A. 21-3503 (1990), in Reno County case 93-CR-81. The Kansas statute that Mr. Yohn was convicted of criminalized a broad range of conduct with someone under the age of 16, which the statute described in three subsections:

> (a) Sexual intercourse; or
> (b) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or satisfy the sexual desires of either the child or the offender, or both; or
> (c) Soliciting the child to engage in any lewd fondling or touching of the person of another with the intent to satisfy the sexual desires of the child, the offender or another.

Because of § 2252A(b)(2)'s use of the phrase "relating to," courts are to apply a looser, less-strict version of the categorical approach to determine whether a prior State conviction qualifies as a predicate conviction. *See United States v. Griffin*, 164 F.4th 782, 787 (10th Cir. 2026) ("[T]he image criminalized under state law need not be identical to the federal definition of child pornography."). "But it still must bear a close resemblance." *Id.*

There are meritorious arguments that Mr. Yohn's prior conviction does not qualify as a predicate offense. This is because the Kansas statute Mr. Yohn was convicted of is potentially broader than the generic offenses of "aggravated sexual abuse, sexual abuse, or abusive sexual conduct" in two ways. First, the definition of "lewd fondling or touching" under Kansas law is not limited to any particular area of the person's body. *See* Pattern Instructions Kansas Criminal 55.110 ("Lewd fondling or touching does not require contact with the sex organ of one or the other."); *Griffin*, 164 F.4th at 787 (holding

California conviction not a qualifying predicate offense because the "touching" it criminalized "need not be 'inherently lewd' or involve 'any specific or intimate body part' of the child.") Second, the Kansas statute sweeps in the solicitation of lewd fondling or touching. K.S.A. 21-3503(1)(c) (1990).

Accepting the parties' plea agreement, where Mr. Yohn pleads to one count of possession of child pornography, avoids the need to litigate this issue, both before the district court and on appeal. *See* D.E. 24 ¶ 15 (appellate waiver). The parties' joint recommended range is higher than the enhanced 10-year mandatory minimum applicable for child pornography possession, and it is inclusive of the enhanced 15-year mandatory minimum that would be applicable to a conviction for child pornography distribution.

## II. The proposed sentencing range is higher than the range recommended by the U.S. Sentencing Guidelines

The proposed plea agreement recommends a sentencing range where even the low end of the plea agreement's range (168 months) is higher than the high end of the Guidelines range (151 months). Mr. Yohn has thus agreed to receive a sentence that is at least 17 months higher, and up to 29 months higher, than the top of his Guidelines range. This is a further reason for the Court to accept the proposed plea agreement.

## III. The proposed sentencing range is consistent with the 18 U.S.C. § 3553(a)(2) factors

The first sentencing purpose under this subsection, "to reflect the seriousness of the offense, to promote respect for the law, and to provide punishment for the offense," is more succinctly labeled "retribution." *Tapia v. United States*, 564 U.S. 319, 325 (2011).

We admit that this is a serious offense that resulted in serious harm, and we believe that the parties' plea agreement proposes a sentencing range that is sufficient but not greater than necessary for the purpose of retribution. At age 63, having lived a life with significant periods of trauma, addiction, and homelessness, and with current concerning health conditions, a sentence of at least 168 months could very well be a functional life sentence for Mr. Yohn. *See* PSR ¶¶ 73-74 ("Mr. Yohn advised he is in the process of getting scheduled to see a cardiologist due to fast heart rate. . . . He also reported that his hands shake constantly, and the cause for the shaking has not been identified. Mr. Yohn relayed that he has problems with his esophagus which has required two endoscopes . . . . he is also in need of dentures because he has few to no teeth remaining.").

The length of the proposed sentence, especially relative to Mr. Yohn's expected life expectancy and health conditions, also means that the proposed sentencing range serves the purpose of protecting the public from future crimes. *See* 18 U.S.C. § 3553(a)(2)(C).

The Court is also required to consider the need for sentence imposed to "afford adequate deterrence to criminal conduct." Imposing a sentence above the Guidelines, as the parties are asking for here, is a considerable deterrent, both to Mr. Yohn and to the general public. A sentence within the parties' recommended range would be the longest Mr. Yohn has experienced.[1] And unlike his prior state conviction, there is no parole or conditional early release in federal prison.

---

[1] In his prior Reno County case, Mr. Yohn was sentenced to an indeterminate sentence of 5-20 years. But he was first released after approximately 9 years and 7 months. *See* PSR ¶ 53.

## IV. The proposed sentencing range is consistent with the 18 U.S.C. § 3553(a)(1) factors

Section 3553(a)(1) requires the Court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant[.]" We acknowledge that the nature and circumstances of this offense are serious, which is reflected in Mr. Yohn's agreement to an upward variance sentence.

Also for the Court's consideration is Mr. Yohn's history and characteristics. Among these is that Mr. Yohn has long struggled with the effects of trauma he experienced as a child and while in the United States Army. These traumas, and other mental health challenges, have contributed to a history of substance abuse issues and homelessness.

Mr. Yohn began experiencing significant trauma at a young age. At age 12, Mr. Yohn was sexually abused by a babysitter. While his sister found out about this and put an end to it, he never told anyone about it or processed it with professional help. PSR ¶ 67. Mr. Yohn then served with the United States Army for five years. PSR ¶ 87. Although Mr. Yohn did not see direct combat, he did personally witness two of his fellow soldiers die in front of him, one of whom he was rendering aid to. Then, in 1990, while working at a bar, he witnessed a man be stabbed to death in front of him. PSR ¶ 76. As he reported during his mental health screening at the Butler County Jail and to a counselor at the VA, respectively:

> he has military related
> PTSD. Even though he did
> not see combat, he did
> experience seeing two
> comrades die. One of them
> was as he was attempting to
> provide critical emergency
> life-saving measures but was
> unable to save him. Pt told
> of another act of violence he
> experienced while deployed
> in the military. --- Pt reports
> currently his anxiety is at
> about a 9.5 on a scale of 0-
> 10 with zero being non. Pt

> death in front of him. He had to clean up the mess since he worked at the bar.
> For about a year afterwards, he reports nightmares, endorses waking up in cold
> sweats, flashbacks, avoidance of crowds, reexperiencing, and hyperarousability
> and exaggerated startle reflex. Reports trauma during the army, reports saving

In the years preceding and during this offense, Mr. Yohn was experiencing significant housing instability, often experiencing long periods of living his truck. As he explained his housing history to the VA:

> PRESENTING CHIEF COMPLAINT: Veteran has been living in his car all summer and
> has experienced homelessness for the last 18 months. Veteran is wanting to seek
> his own housing to comply with his correction obligations of Reno County.
> Veteran must have an address to moved his corrections to Wichita. Veteran is
> also wanting to seek substance abuse treatment.
>
> HOUSING HISTORY OVER THE LAST 3 YEARS:
> 2021- Veteran living in his trailer in a friends back yard.
> 2022- Veteran lived in his moms house.
> 2023- Veteran has been living in between friends homes and his vehicle.

But the effects of his trauma and other mental health challenges made it harder for Mr. Yohn to gain the housing stability he needed, as large, congregate settings are particularly difficult for him. As explained to a VA social worker and to mental health staff at Butler County jail:

CONTENT OF CALL: SWer contacted Veteran to follow up on homeless hotline call. The veteran reported that he has been living in Wichita in his truck as summer and is needing housing assistance. The Veteran stated that he was not interested in community shelter because he does not get along with large groups of people. The Veteran also stated that he is able to stay with some friends but tries not to overstay his welcome. Veteran reported that he is wanting to go into wither inpatient or outpatient substance use treatment and reported that he has a conviction in Reno County for possession of methamphetamines. Veteran is wanting to move his conviction from Reno County to Wichita, but needs a permanent address to do so. Veteran reports that he does not have any income but does "odd jobs here and there". Veteran stated that he receives food stamps and is able to buy food and water with it.

information should he need to contact her for any reason. Aftere video mtg with over Veteran stated that he feels comfortable going to the aformentioned shelter

since it was a smaller shelter and only for Veterans. Veteran stated that previously he was hesitant about going into the homeless program fearing that he

would have to share living space in large open areas. Veteran stated that he does not do very well being around large groups of people in open areas. Veteran

he has PTSD and is bothered by the noise and large crowd of his current living situation. He states he moved from B-pod to C-Pod last night, and it is "so hard to deal with 60 screaming people" and would prefer to be isolated. Anxiety rated at 9.5/10. He states he doesn't

Despite these challenges, Mr. Yohn has never given up on trying to beat his addiction. In late 2023, Mr. Yohn relayed the following to a VA case worker as part of his intake for substance use treatment:

Pt goal(s)/motivation(s) for treatment: "Veteran has seen the changes two of his friends have made and how their lives have changed making him realize that he can do the same thing and get back to where he was when he was sober and had goals."

```
longest period of abstinence: ~25 years from 1994-2019. Reasons for relapsing:
when I start feeling like i am getting cheated of pushed around. New Years Day
every year (when wife passed away) anniversary dates. Veteran stated his goal
while in treatment is "I want to be able to beat my meth addiction and be able
to control it." Veteran stated his needs: "I need to learn tools to turn the
cravings off, develope a list of things I can to do to help distract myself when
```

In early 2024, Mr. Yohn successfully completed the VA's Substance Abuse Residential Rehabilitation Treatment Program in Kansas City:

```
PATIENT'S CONDITION AT DISCHARGE:  (stability level, involvement in
treatment, motivation level, quality of continuing care plans, etc.)
Veteran appeared to be medically and emotionally stable upon discharge. Veteran
actively participated in treatment by attending all groups and completing all
work assigned. Veteran has developed a manageable recovery plan that includes
attending AA and Smart Recovery groups, along with continued outpatient care
```

Respectfully submitted,

s/ Ellen Albritton
ELLEN ALBRITTON
Sup. Ct. No. 28978
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6126
Fax: (316) 269-6175
E-mail: ellen_albritton@fd.org

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court on October 26, 2026, by using the CM/ECF system, which will send a notice of electronic filing to all interested parties.

s/ Ellen Albritton
ELLEN ALBRITTON, #28978